**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

ANTHONY DILORENZO,              :
                                :   Civil Action No. 06-291 (JBS)
          Petitioner,           :
                                :
     v.                         :   **OPINION**
                                :
FEDERAL BUREAU OF PRISONS,      :
et al.,                         :
                                :
          Respondents.          :

**APPEARANCES:**

   ANTHONY DILORENZO, Petitioner <u>pro se</u>
   #16169-014
   F.C.I. Fort Dix
   P.O. Box 1000
   Fort Dix, New Jersey  08640

   CHRISTOPHER J. CHRISTIE, United States Attorney
   IRENE E. DOWDY, Assistant U.S. Attorney
   402 East State Street, Room 430
   Trenton, New Jersey  08608
   Attorneys for Respondents

**SIMANDLE**, District Judge

   Petitioner Anthony DiLorenzo ("DiLorenzo"), a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The named respondents are the Federal Bureau of Prisons, Charles Samuels, Warden at FCI Fort Dix., and Harley Lappin, Director.

I.  BACKGROUND

On May 19, 2005, petitioner DiLorenzo was sentenced to a 16-month prison term, to be followed by three years supervised release, by the United States District Court for the District of Connecticut pursuant to his conviction by guilty plea to fraud charges.  He began his sentence by self-reporting to F.C.I. Fort Dix Camp on June 20, 2005.  DiLorenzo's statutory projected release date is August 17, 2006, with earned and projected good conduct time credits.

DiLorenzo asserts that the Unit Team at F.C.I. Fort Dix had recommended a July 7, 2006 placement date for petitioner at a community correctional center ("CCC").  Specifically, DiLorenzo was provided with a Sentence Monitoring Computation Data form showing a pre-release preparation date or six month/10% date of July 7, 2006.  This recommendation followed the BOP's February 2005 regulations that strictly enforced the 10% limitation on CCC placements under 18 U.S.C. § 3624(c).

On or about January 20, 2006, DiLorenzo filed this habeas petition challenging the 10% limitation date based on the Third Circuit's recent opinion in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (2005).  He states that, on September 30, 2005, his long time physician, Dr. Guardine, informed the staff at F.C.I. Fort Dix that petitioner's inflamed diverticulitis requires certain precautions to prevent colon/rectal cancer, and that

these precautions have not been taken into consideration with respect to the time recommended for petitioner's CCC placement. DiLorenzo contends that the BOP's decision did not properly consider the factors set forth in 18 U.S.C. § 3621(b).

It would appear that DiLorenzo did not fully exhaust his administrative remedies on the grounds before bringing this action.  However, to do so would have been futile given the imminent date scheduled for his CCC 10% eligibility release on July 7, 2006.

The respondents answered the petition on April 17, 2006, contending that DiLorenzo's CCC placement date was recently re-determined consistent with the Third Circuit's directive in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (2005); namely, that the BOP shall consider the factors set forth in 18 U.S.C. § 3621(b).[1]  Respondents further allege that, upon their good faith re-determination, the Unit Team recommended that DiLorenzo be placed in a CCC for 30 to 60 days before his projected release date of August 17, 2006, and a placement date of July 11, 2006 was scheduled.  (Mulvey Decl., at ¶¶ 3-5, 11,

---

[1] The respondents note that the original CCC determination in this case preceded the Third Circuit's ruling in Woodall, which was issued on December 15, 2005.  On February 6, 2006, before receiving this Court's order directing a response, respondents reconsidered DiLorenzo's CCC placement date in good faith under Woodall and without regard to the BOP February 2005 regulations.  See Declaration of Thomas Mulvey, Unit Manager at F.C.I. Fort Dix Camp, dated April 17, 2006, ("Mulvey Decl.") at ¶¶ 8,9.

Exhibit B).  This recommended date was based on the Unit Team's consideration of DiLorenzo's strong family ties and employment prospects, an approved residence, and appropriate release funds to ensure a smooth transition from prison life to community life. (Id., at ¶ 10).

## II.   RELEVANT STATUTES AND REGULATIONS

Federal law imposes upon the BOP the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
>     (1) the resources of the facility contemplated;
>     (2) the nature and circumstances of the offense;
>     (3) the history and characteristics of the prisoner;
>     (4) any statement by the court that imposed the sentence--
>         (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>         (B) recommending a type of penal or correctional facility as appropriate; and
>     (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the

>     transfer of a prisoner from one penal or correctional
>     facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

>     (c) Pre-release custody.--The Bureau of Prisons shall,
>     to the extent practicable, assure that a prisoner
>     serving a term of imprisonment spends a reasonable
>     part, not to exceed six months, of the last 10 per centum of
>     the term to be served under conditions that will afford the
>     prisoner a reasonable opportunity to adjust to and prepare
>     for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

Recently, in Woodall, the Third Circuit Court of Appeals considered and rejected the validity of BOP regulations that became effective on February 14, 2005, which regulations restricted an inmate's CCC transitional placement to the last 10% of the inmate's sentence.  Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

>     In sum, individual determinations are required by
>     § 3621(b).  ...  While the BOP may exercise
>     considerable discretion, it must do so using the
>     factors the Congress has specifically enumerated.
>
>     ...

> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered." We disagree. ...
>
> ... The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding where to initially place an inmate, as well as whether <u>or</u> <u>not</u> to transfer him. ... The congressional intent here is clear: determinations regarding the placement scheme-including where a prisoner is held, and when transfer is appropriate-must take into consideration individualized circumstances. ...
>
> ...
>
> In short, we conclude that the § 3621(b) factors apply to BOP determinations regarding whether or not initial placements or transfers are appropriate. We thus do not find that the factors are limited by the temporal references in § 3624.

<u>Woodall</u>, 432 F.3d at 247, 249-50.

Thus, a prisoner is entitled to an individualized determination as to his pre-release placement based upon the factors identified in § 3621(b). However, as noted by the Third Circuit, the fact that the BOP <u>may</u> assign a prisoner to a CCC does not mean that it <u>must</u>.

### III. <u>ANALYSIS</u>

Based on the record provided by respondents, this Court finds that the Unit Team's recommendation was made with regard to the factors set forth in § 3621(b) and <u>Woodall</u>, and without regard to the February 2005 regulations' strict 10% limitation on CCC placement. The Unit Team considered the enumerated factors, and found that DiLorenzo did not have a demonstrated need for CCC

6

placement longer than 10% of his sentence.  In particular, the Unit Team noted that DiLorenzo already has a release residence approved by the U.S. Parole Office, he has strong family support and strong employment prospects that will make his transition from prison to community life easier.  (Mulvey Decl., ¶ 10).

Thus, as demonstrated above, it is clear that the BOP's decision in this regard was within the agency's discretionary authority under § 3621(b), based on its consideration of numerous factors, including DiLorenzo's transitional needs.

Further, there is no indication from the facts and circumstances considered in the CCC referral process in this case that DiLorenzo was denied due process.  In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient

7

to invoke due process"). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

Moreover, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.  Finally, an inmate does not have a constitutional right to a hearing on such transfers. See McKune v. Lile, 536 U.S. 24, 37 (2002).  Thus, it appears that DiLorenzo received all the process he was due in the BOP's discretionary decision as to his transitional CCC placement.  DiLorenzo has indicated no special need for transitional placement; in fact, he has demonstrated strong employment prospects, family support, and an approved residence upon his release from prison.  There is no indication that DiLorenzo's history of diverticulitis requires a longer period of CCC placement.  Thus, there is no demonstrated need for an earlier release for reintegration into the community based on all the factors considered by the BOP pursuant to 18 U.S.C. § 3621(b).

III.  CONCLUSION

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

                                      **s/ Jerome B. Simandle**
                                      Jerome B. Simandle
                                      United States District Judge

Dated:  **May 15, 2006**